UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **HOWARD NEUMAIER** <br> 303 W. Orbison Street <br> Apartment #4 <br> Barneveld, WI 53507 | : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br> Docket No.: <br><br> JURY TRIAL DEMANDED |
| Plaintiff, | : <br> : | |
| and | : <br> : | |
| **RIVERPORT INSURANCE CO.** <br> 1250 East Diehl Road, Suite 200 <br> Naperville, IL 60563 | : <br> : <br> : <br> : <br> : | |
| Involuntary Plaintiff. | : <br> : <br> : | : |
| v. | : <br> : | |
| **WALINGA, INC.** <br> 5656 Highway 6 North <br> R.R. #5 <br> Guelph, Ontario, Canada N1H 6J2 | : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| **WALINGA USA, INC.** <br> 1190 Electric Avenue <br> Wayland, MI 49348 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| **EATON CORPORATION** <br> 1000 Eaton Boulevard <br> Cleveland, OH 44122 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| **ABC INSURANCE CO., the fictitious name for an unknown insurance company** | : <br> : <br> : <br> : <br> : | |
| Defendants. | : <br> : | |

## COMPLAINT – CIVIL ACTION

Plaintiff, Howard Neumaier, hereby alleges and states as follows:

## PARTIES

1. Plaintiff, Howard Neumaier, is an adult citizen and resident of the State of Wisconsin, who resides at 303 W. Orbison Street, Apartment #4, Barneveld, WI, 53507.

2. Involuntary Plaintiff, Riverport Insurance Company (hereinafter "Riverport"), is a foreign insurance company, duly organized and existing under and by virtue of the laws of the State of Illinois, with a principal place of business at 1250 East Diehl Road, Suite 200, Naperville, IL 60563; that Riverport has paid workers' compensation benefits on behalf of plaintiff, Howard Neumaier, as a result of the injuries he sustained in the May 23, 2019 incident as alleged herein and is therefore named as an alleged subrogated party in this action pursuant to Wis. Stat. § 803.03; and that Riverport is entitled to reimbursement and recover pursuant to Wis. Stat. § 102.29.

3. Defendant, Walinga, Inc. is a foreign corporation, organized under the laws of the country of Canada, with a principal place of business at 5656 Highway 6 North, R.R. #5, Guelph, Ontario, Canada N1H 6J2; that on information and belief, said defendant is engaged in the manufacturing, assembly, sale and distribution of bulk feed bodies, and auger discharge systems that are the subjects of this lawsuit, and is directly liable to the plaintiff for the injuries and damages he sustained as a result of the May 23, 2019 incident, as alleged herein.

4. Defendant, Walinga USA, Inc., is a foreign corporation organized under the laws of the state of Michigan with a principal place of business at 1190 Electric Avenue, Wayland, MI 49348.

5. Defendant, Eaton Corporation (hereinafter "Eaton"), is a foreign corporation organized under the laws of the state of Ohio with a principal place of business at 1000 Eaton Boulevard, Cleveland, OH 44122.

6. Defendant, ABC Insurance Co. (hereinafter "ABC") is the fictitious name of an unknown insurance company that issued a policy of liability insurance to or for the benefits of Defendants, Walinga, Inc., Walinga USA, Inc. and Eaton Corporation; that on information and belief, at all times material hereto, ABC had in full force and effect a policy or policies of liability insurance issued to the Defendants, Walinga, Inc., Walinga USA, Inc. and Eaton Corporation, which policy or policies provided coverage to said Defendants for claims such as those hereinafter set forth; that in said contract or contracts of insurance, ABC reserved the right to settle or adjust any claims arising thereunder and to defend any lawsuits instituted by virtue of any such claims, and it has a direct interest in this litigation; that by reason of sec. 803.04(2), Wis. Stat., ABC is a proper defendant herein, and is directly liable to plaintiff for the injuries and damages he sustained as a result of the May 23, 2019 incident as alleged herein; that pursuant to sec. 807.12(2), Wis. Stats., this complaint will be amended to insert the proper name or names for said defendant as soon as they are ascertained.

7. Defendants, Walinga, Inc. and Walinga USA, Inc., will hereinafter be referred to collectively as "Walinga".

8. Defendants, Walinga, Inc., Walinga USA, Inc., Eaton Corporation and ABC Insurance Co., will hereinafter be referred to collectively as Defendants.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in the Western District of Wisconsin pursuant to 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

10. Jurisdiction is further proper within the Western District of Wisconsin as Defendants routinely and systematically conducts business within the State of Wisconsin so as to purposefully avail themselves to the jurisdiction of the Western District of Wisconsin.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the events giving rise to the instant claim occurred within the Western District of Wisconsin, specifically at Ziegler Dairy Farms located at 5031 Church Road, Middleton, WI 53562.

## FACTS GIVING RISE TO THE ACTION

12. At all times material hereto, Plaintiff, Howard Neumaier, was acting within the course and scope of his employment with Premier Cooperative (hereinafter "Premier") as a bulk feed delivery driver.

13. At all times material hereto, Defendants, through their respective officers, employees, directors, trade groups, successors, predecessors, servants, franchisees, franchisors, trade names, distributors, sales forces, and/or agents of any and all other types were in the trade or business of designing, manufacturing, testing, marketing, selling, and/or distributing bulk feed bodies with remote control capabilities.

14. On or about May 23, 2019, Plaintiff, Howard Neumaier, was delivering bulk feed to Ziegler Dairy Farms, Inc., 5031 Church Road, Middleton, WI 53562, on a scheduled delivery.

15. On the aforesaid date, Plaintiff, Howard Neumaier, was operating a Peterbilt truck, Model 567, ID #: 1NPCX4TXXJD461428, that was equipped with a bulk feed body, and a remote-controlled auger discharge system.

16. On information and belief, the subject bulk feed body and auger discharge system is a Walinga brand Ultra-Lite model that was designed, manufactured, tested, marketed, sold and/or distributed by Walinga.

17. On information and belief, the remote control for the subject bulk feed body and auger is a model T110C-001062, ten (10) button, one way handheld radio remote that was designed, manufactured, tested, marketed, sold and/or distributed by Defendant Eaton.

18. On information and belief, the subject remote control was sold and/or distributed by Defendant Eaton to Walinga for use with Walinga's products including, but not limited to, the subject bulk feed body and auger discharge system.

19. On information and belief, the subject remote control was programmed by Walinga to be used specifically to control the subject bulk feed body and auger discharge system, and sold and/or distributed to Plaintiff's employer, Premier Cooperative.

20. On the aforesaid date, after making the bulk of his feed delivery, Plaintiff, Howard Neumaier, opened the door to the subject auger discharge system to empty out residual feed that was stuck inside the auger. This is done by running the auger discharge system in reverse to make the excess feed fall out into a bucket placed below it.

21. After opening the aforesaid door, Plaintiff, Howard Neumaier, accidentally dropped the subject remote control on the ground, and immediately bent down to pick it up with his right hand.

22. When the subject remote control fell, the impact with the ground caused the button that turns on the subject auger discharge system to be pressed, which caused the auger to begin turning.

23. When the subject auger began turning, Mr. Neumaier's left hand and arm were pulled into it.

24. Mr. Neumaier was able to turn off the auger with the subject remote control. However, the rotation of the subject auger discharge system caused Mr. Neumaier's left arm and hand to become stuck inside the auger such that he had to be freed by emergency personnel.

25. As a direct and proximate result of the aforesaid incident, Plaintiff, Howard Neumaier, suffered severe and permanent injuries including, but not limited to, an amputation of the left arm below the elbow, sprains and strains, contusions, bruises and other injuries, all of which may be permanent in nature.

26. As a direct and proximate result of the aforesaid incident, Plaintiff, Howard Neumaier, has suffered physical and emotional pain, discomfort, frustration, embarrassment, loss of enjoyment of life's pleasures, and an inability to attend to usual and daily activities and will continue to suffer the same for an indefinite time into the future.

27. As a direct and proximate result of the aforesaid incident, Plaintiff, Howard Neumaier, has required and continues to require medical treatment in and about an effort to cure himself of his injuries and has incurred medical expenses, to his great detriment and loss, and may continue to require medical treatment for an indefinite time in the future.

28. As a direct and proximate result of the aforesaid incident, Plaintiff, Howard Neumaier, suffered from lost wages and may continue to suffer from lost wages into the future as well as a loss of earning capacity.

## COUNT I – STRICT LIABILITY
## PLAINTIFF v. DEFENDANTS

29. Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though fully set forth herein at length.

30. At all times material hereto, Defendants were in the trade or business of designing, manufacturing, testing, marketing, selling and/or distributing bulk feed bodies with remote-controlled auger discharge systems and related accessories including remote controls for said products.

31. Defendants designed, manufactured, tested, marketed, sold and/or distributed the subject bulk feed body, auger discharge system and remote control by placing them into the stream of commerce and selling them in the State of Wisconsin.

32. At the time the subject bulk feed body, auger discharge system and remote control left the control of Defendants, they were defective and unreasonably dangerous to the people who might reasonably be expected to use them including Plaintiff, Howard Neumaier. These defects include, but are not limited to, the conditions described in the following paragraphs.

33. The subject remote control was programmed by Walinga in such a fashion that the button which turned on the auger discharge system of the subject bulk feed body only had to be pressed once and released in order to activate the auger.

34. The subject remote control also did not contain a button cover or other safety mechanism, including but not limited to two-button activation or constant depression of the "on" button, to prevent the button which turned on the auger discharge system from being pressed accidentally, thereby suddenly and accidentally activating the auger when the user was not ready to do so.

35. The design of the subject bulk feed body, auger discharge system and remote control failed to incorporate other designs and technologies that could protect foreseeable users from sudden and accidental activation of the subject auger discharge system thereby exposing said users to the risk of serious injury.

36. The subject bulk feed body, auger discharge system and remote control lacked adequate and sufficient warnings and instructions about the risks, dangers and harms they presented and reasonable means to reduce such risks, dangers and harms.

37. Due to the subject remote control being programmed to allow activation via a single button press, and the lack of any safety mechanism to prevent a sudden and accidental activation of the subject auger discharge system, the subject bulk feed body, auger discharge system and remote control were defective and unreasonably dangerous to people who might reasonably be expected to put said products to their normal uses including Plaintiff, Howard Neumaier.

38. The subject bulk feed body, auger discharge system and remote control were expected by Defendants to reach, and did reach, the user without substantial change in the condition they were in at the time they were manufactured, sold and placed into the stream of commerce by Defendants.

39. At the time of the aforesaid incident, the subject bulk feed body, auger discharge system and remote control were being used in an expected and reasonably foreseeable manner.

40. Due to the design and/or manufacturing flaws alleged herein, and the lack of adequate and sufficient warnings, the subject bulk feed body, auger discharge system and remote control were defective and unreasonably dangerous to consumers, such as Plaintiff, Howard Neumaier, who might be reasonably expected to use it.

41. Defendants designed, manufactured, tested, marketed, sold and/or distributed the subject bulk feed body, auger discharge system and remote control in a defective and/or unreasonably dangerous condition in the following ways:

    a. Designing, manufacturing, testing, marketing, selling and/or distributing the subject bulk feed body, auger discharge system and remote control in a defective and unreasonably dangerous condition such that the auger discharge system could be suddenly and accidentally activated by the user by pressing and releasing a single button on the subject remote control and thereby exposing the user to an unreasonable risk of serious injury;

    b. Failing to incorporate an alternative safer design and/or other safety mechanisms to minimize and/or eliminate the risk of sudden and accidental starting of the subject auger discharge system during normal and foreseeable use;

    c. Failing to provide an alternative design and/or safety mechanism for the subject remote control to reduce and/or eliminate the risk of the button which activates the subject auger discharge system from being accidentally pressed and released by the user thereby activating the auger discharge system when the user is not ready to do so;

    d. Programming the subject remote control in such a fashion that the button which turned on the subject auger discharge system only had to be pressed once and released in order to activate the auger;

    e. Presenting an unreasonable risk of harm to foreseeable users of the subject bulk feed body, auger discharge system and remote control due to their propensity to suddenly activate as a result of an unguarded button on the subject remote control which can be pressed and released accidentally by the user;

    f. Failing to warn users of the subject bulk feed body, auger discharge system and remote control that during regular use, the auger discharge system can be suddenly activated by pressing and releasing a single button on the remote control;

    g. Failing to conduct adequate safety testing before placing the subject bulk feed body, auger discharge system and remote control into the stream of commerce;

      h.      Failing to perform an adequate risk analysis of the subject bulk feed body, auger discharge system and remote control;

      i.      Advertising and/or marketing the subject bulk feed body, auger discharge system and remote control as being capable of performing in ways that they cannot safely perform;

      j.      Failing to properly train and/or instruct users how to prevent the subject bulk feed body, auger discharge system and remote control from suddenly activating;

      k.      Failing to properly train and/or instruct users how to properly maintain the subject bulk feed body, auger discharge system and remote control;

      l.      Failing to properly test and/or inspect the subject bulk feed body, auger discharge system and remote control for latent manufacturing defects;

      m.      Placing the subject bulk feed body, auger discharge system and remote control into the stream of commerce with a manufacturing defect or defects that was the proximate cause of the aforesaid incident; and

      n.      Failing to design, manufacture, test, market sell and/or distribute the bulk feed body, auger discharge system and remote control in compliance with applicable ANSI, ASME and/or other industry safety standards.

42. As a direct and proximate result of the defective and unreasonably dangerous nature of the subject bulk feed body, auger discharge system and remote control, as it existed when it left the custody and control of Defendants, Plaintiff, Howard Neumaier, was caused to suffer injuries and damages as described herein above.

43. Defendants are strictly liable for the injuries suffered by Plaintiff, Howard Neumaier, which were caused by defects and inadequacies in the design, manufacture and warnings of the subject bulk feed body, auger discharge system and remote control.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiff for his damages plus costs.

## COUNT II – NEGLIGENCE
## PLAINTIFF v. DEFENDANTS

44. Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though fully set forth herein at length.

45. As designers, manufacturers, testers, marketers, sellers and/or distributors of the subject bulk feed body, auger discharge system and remote control, Defendants owed a duty to all reasonably foreseeable users of the subject bulk feed body, auger discharge system and remote control, including Plaintiff, Howard Neumaier, to exercise reasonable care with respect to the design, manufacture, testing, sale, training, instruction and warnings associated with the subject bulk feed body, auger discharge system and remote control.

46. Defendants breached their duty of care, *inter alia*, by committing the following acts or omissions:

   a. Designing, manufacturing, testing, marketing, selling and/or distributing the subject bulk feed body, auger discharge system and remote control in a defective and unreasonably dangerous condition such that the auger discharge system could be suddenly and accidentally activated by the user by pressing and releasing a single button on the subject remote control and thereby exposing the user to an unreasonable risk of serious injury;

   b. Failing to incorporate an alternative safer design and/or other safety mechanisms to minimize and/or eliminate the risk of sudden and accidental starting of the subject auger discharge system during normal and foreseeable use;

   c. Failing to provide an alternative design and/or safety mechanism for the subject remote control to reduce and/or eliminate the risk of the button which activates the subject auger discharge system from being accidentally pressed and released by the user thereby activating the auger discharge system when the user is not ready to do so;

   d. Programming the subject remote control in such a fashion that the button which turned on the subject auger discharge system only had to be pressed once and released in order to activate the auger;

  e. Presenting an unreasonable risk of harm to foreseeable users of the subject bulk feed body, auger discharge system and remote control due to their propensity to suddenly activate as a result of an unguarded button on the subject remote control which can be pressed and released accidentally by the user;

  f. Failing to warn users of the subject bulk feed body, auger discharge system and remote control that during regular use, the auger discharge system can be suddenly activated by pressing and releasing a single button on the remote control;

  g. Failing to conduct adequate safety testing before placing the subject bulk feed body, auger discharge system and remote control into the stream of commerce;

  h. Failing to perform an adequate risk analysis of the subject bulk feed body, auger discharge system and remote control;

  i. Advertising and/or marketing the subject bulk feed body, auger discharge system and remote control as being capable of performing in ways that they cannot safely perform;

  j. Failing to properly train and/or instruct users how to prevent the subject bulk feed body, auger discharge system and remote control from suddenly activating;

  k. Failing to properly train and/or instruct users how to properly maintain the subject bulk feed body, auger discharge system and remote control;

  l. Failing to properly test and/or inspect the subject bulk feed body, auger discharge system and remote control for latent manufacturing defects;

  m. Placing the subject bulk feed body, auger discharge system and remote control into the stream of commerce with a manufacturing defect or defects that was the proximate cause of the aforesaid incident; and

  n. Failing to design, manufacture, test, market sell and/or distribute the bulk feed body, auger discharge system and remote control in compliance with applicable ANSI, ASME and/or other industry safety standards.

47. Defendants' breaches of their duty of care constitute negligence.

48. Defendants knew or should have known through the exercise of reasonable care that the subject bulk feed body, auger discharge system and remote control were designed, manufactured, tested, marketed, sold and/or distributed in an unreasonably dangerous condition.

49. As a direct and proximate result of Defendant's aforesaid negligence, Plaintiff, Howard Neumaier, was caused to suffer injuries and damages as described herein above.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiff for his damages plus costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**MURPHY DESMOND, S.C.**

BY:   /s/ Scott G. Salemi
Scott G. Salemi
State Bar No. 1118960
33 East Main Street, Suite 500
Madison, WI 53703
*Attorneys for Plaintiff*

Date:  March 4, 2021

4826-7141-7310, v. 1